IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

JOHAN TORRES-ROSARIO

Plaintiff

v.

UNITED STATES OF AMERICA

Defendants

**Civil No.** 07-1282

**OPINION & ORDER**

Petitioner, Johan Torres-Rosario ("Torres" or "Petitioner"), filed a Motion to Vacate, Set Aside or Correct Sentence (Docket # 1). After considering his motion, the United States of America's ("United States") Opposition thereto (Docket # 10), Petitioner's Reply (Docket # 19), and Supplemental Motion (Docket # 20), and Second Supplemental Motion (Docket # 24), along with other serial filings by Torres, the Motion to Vacate, Set Aside or Correct Sentence is **DENIED**.

**Factual Background**

The facts behind Petitioner's motion have been generally spelled out in his prior appeal, so this Court will rehearse them only in as much as is necessary to resolve the controversies at bar. The 28 U.S.C. §2255 motion also pleads some new facts that, although ultimately tied-up in old arguments, also require attention. For the sake of coherence, this Court will review the most central aspects of petitioner's factual allegations.

The facts stipulated prior to Petitioner's plea, and sentencing established that:

> During the course of the charged conspiracy, including the defendants in Criminal No. 03-188 (SEC), and others, Defendant did distribute cocaine in Juncos, Puerto Rico. Defendant was identified as an organizer, leader, manager, or supervisor for the supply and sale of the cocaine. At different times during and in relation to the conspiracy, [Petitioner] knew members of the conspiracy possessed firearms. Defendant is being held responsible for at least fifteen (15) kilograms but less than fifty (50) kilograms (net weight) of cocaine.

**CIVIL NO. 07-1282 (SEC)**                                                                 **Page 2**

Docket # 25-2 at 16. Prior to the guilty plea, Petitioner and the United States engaged in several months of negotiations, but they reached no agreement despite an offer of an 11-year sentence on identical terms to that eventually pled. The final agreement came on the eve of trial, only after the United States announced its witness and evidentiary lists. As the United States had expended considerable resources on trial preparation, the last-minute deal proffered to Petitioner was less favorable to him than the original offer of an 11-year sentence.

Petitioner complains that the Assistant United States Attorney ("AUSA") assigned to the case, ". . . threatened Torres with a life sentence if he went to trial and didn't accept the 11 year plea offer. When [the AUSA] realized [Torres] was standing by his decision and right to go to trial he got angry and in an intimidating posture told [Torres] that if he didn't sign by 5:00 p.m. every day that went by the plea offer would increase 2 years and on the day of the trial he would give him life." Docket 1 at 4. Subsequently, the day before the trial Torres accepted a 15 year sentence, after the evidence and witness list for trial was revealed. Torres-Rosario, 447 F.3d at 67. Now, Torres alleges that he was only given 15 minutes to ponder his plea, and that it did not reflect his true will. Nevertheless, he does not plead actual innocence, and the First Circuit found his plea was voluntary. Id.

Soon after the plea was entered, Petitioner had second thoughts, and requested his counsel, Ramón García ("García"), to file a motion to withdraw the guilty plea. The request was predicated on the short time given to Petitioner in order to ponder his choices before a hastily convened change of plea hearing. Although, central to Petitioner's claim for relief under 28 U.S.C. §2255 , García's motion did not mention the AUSA's conduct. Instead, allegations of improper threats eventually entered the record via two *pro se* motions filed by Torres after the original motion to withdraw was denied by this Court. These two motions for reconsideration were also denied, and Petitioner received a sentence of 188 months.

Facing a long term of imprisonment, Petitioner now avers that his counsel, performed deficiently first by not protecting him from the AUSA's threats of a greatly increased sentence, and then by not bringing prosecutorial misconduct arguments in the original motion to withdraw his guilty plea. The allegations of ineffective assistance of counsel are buttressed by averments that García labored under a conflict of interest because he did not wish to reveal the aforementioned allegedly deficient conduct, and thus, García did not make crucial arguments regarding the voluntariness of the plea bargain.

**Standard of Review**

Federal District Courts have the jurisdiction to entertain motions under section 2255 of title 28 of the United States Code when a petitioner is in incarcerated by sentence of a federal court. See 28 U.S.C. §2255. Section 2255 provides four grounds on which a federal prisoner may challenge his sentence: (1) the sentence imposed is in violation of the Constitution and/or laws of the United States; (2) the court lacked the jurisdiction to impose the sentence; (3) the sentence exceeded the maximum term authorized by law; or (4) the sentence is otherwise subject to collateral review. See id. Should a court find any of these errors, it "shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate." Id.

The petitioner bears the burden of establishing, by a preponderance of the evidence, that he is entitled to relief. United States v. DiCarlo, 575 F.2d 952, 954 (1st Cir. 1978). In particular, "[t]he burden is on the petitioner to demonstrate ineffective assistance by a preponderance of the evidence." Lema v. U.S., 987 F.2d 48, 51-52 (1st Cir. 1993); Wright v. Van Patten, 552 U.S. 120, 124, 128 S.Ct. 743 (2008). Also, in petitions that are inadequate on their face, or although facially adequate, are "conclusively refuted as to the alleged facts by the files and records of the case, *summary dismissal* is appropriate." Id. Additionally, "even a section 2255 petition

**CIVIL NO. 07-1282 (SEC)**  Page 4

predicated on specific assertions of fact allegedly supported in the record may be dismissed summarily by the district court," provided "the district court can ... 'test' the ... allegations by assuming *arguendo* their truth, and then assessing their sufficiency in light of the relevant constitutional standards and the record." Id.

**Applicable Law and Analysis**

The First Circuit has consistently held that: "[i]ssues disposed of in a prior appeal will not be reviewed again by way of a 28 U.S.C. § 2255 motion,." Singleton v. U.S., 26 F.3d 233, 240 (1st Cir. 1994) (citing Dirring v. U.S., 370 F.2d 862, 864 (1st Cir. 1967)). Thus, any issue seen on direct appeal by the First Circuit, relating to United States v. Torres-Rosario, 447 F.3d 61, 63 (1st Cir. 2006), is precluded from being considered by this Court through the use of a 28 U.S.C. § 2255 motion.[1] In addition, in so far as petitioner is seeking to add new elements to his constitutional claim not raised in his direct appeal, he must show cause for the failure to do so and actual prejudice stemming from it. See Knight v. U.S., 37 F.3d 769, 774 (1st Cir. 1994). Of the grounds that Petitioner asserts in his 28 U.S.C. § 2255 motion, only ineffective assistance of counsel escapes preclusion due to prior appeal. Petitioner´s constitutional claims for double jeopardy are far fetched, and no cause has been show as to why they were not directly argued on appeal.[2]

*Ineffective Assistance of Counsel*

The Sixth Amendment provides for the right to counsel, which can lead to vacating sentences obtained when the accused did not enjoy proper representation, truncating his or her

---

[1] Furthermore, this Court will enforce the First Circuit's rule that, "issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation are deemed waived." U.S. v. Jiminez, 498 F.3d 82, 88 (1st Cir. 2007) (citing United States v. Zannino, 895 F.2d 1, 17 (1st Cir.1990)).

[2] While this Court finds them to be precluded, Petitioner's claims of double jeopardy due to prior civil forfeiture also are plainly lacking merit. See, e.g., U.S. v. Ursery, 518 U.S. 267, 116 S.Ct. 2135 (1996).

**CIVIL NO. 07-1282 (SEC)**                                                                 Page 5

right to a fair trial. However, according to Strickland v. Washington, 466 U.S. 668 (1984), in order to obtain this remedy, a defendant must "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694 .

Petitioner's claims of inadequate representation depend on his arguments that the AUSA assigned to his case acted to coerce him into pleading guilty, and in the context of said coercion, García failed to competently advocate for his rights, leading to an allegedly involuntary guilty plea. Nevertheless, the alleged prosecutorial coercion, while potentially improper, has already been disposed of upon appeal. No further evidence or allegations have come before this Court, therefore no new action is warranted. This motion cannot act as a second review of Petitioner's Rule 11 motion to withdraw his guilty plea.  Even if it were not precluded, the Supreme Court has established ". . . as constitutionally legitimate the simple reality that the prosecutor's interest at the bargaining table is to persuade the defendant to forgo his right to plead not guilty." Bordenkircher v. Hayes, 434 U.S. 357, 364, 98 S.Ct. 663, 668 (1978).

Prosecutorial plea bargaining cannot reach the levels of coercion, but threats of more serious charges are not considered as such, "[a]nd if the negotiations are not successful, due process is not violated if the prosecutor carries out threats made during the negotiations . . ." U.S. v. Yeye-Cabrera, 430 F.3d 1, 24 (1st Cir. 2005). In fact, even prosecutorial vindictiveness during plea bargaining only raises concerns regarding the voluntariness of the plea. Id. As long as the accused may freely accept or reject a plea offer, the current state of the law does not recognize or seek to curtail "punishment or retaliation" by a prosecutor in recommending either a higher charge or sentence. Id. Therefore, "[e]ven when a guilty plea is at issue, [the First

**CIVIL NO. 07-1282 (SEC)** **Page 6**

Circuit] has rejected arguments that pressure to enter a plea is sufficient to render the plea involuntary." Id. at 26, n. 19; see also U.S. v. Mescual-Cruz, 387 F.3d 1 (1st Cir. 2004).

In terms of policy, the stark reality facing Torres is that given many drug crimes carry perpetual, or nearly perpetual, sentences, the system highly favors defendants accepting guilty pleas, rather than risking the rest of one's life at trial. The threat of long sentences reflects Congress' punitive strategy for the prevention of drug trafficking. The decision in the United States has been to penalize drug trafficking with perpetual, and near perpetual sentences. Prosecutors undoubtedly take advantage of this reality when they elicit guilty pleas. However, it has been firmly established that this is not what the case law means when it speaks of coercion by a prosecutor. See, e.g., id. Petitioner's efforts aim at second-guessing his sentence, which while long, could have been much longer without his counsel's urging him to accept a plea bargain.

In the case at bar, the First Circuit already resolved that the threats made by the AUSA were "not wrongdoing" and that there was very little Torres' counsel could have done to change the situation. United States v. Torres-Rosario, 447 F.3d 61, 65 (1st Cir. 2006). Given that the alleged coercion, a "vivid threat," was ruled as legal, this Court cannot find counsel unreasonable for not presenting it in the later motion to withdraw plea. Apparently, Petitioner's counsel's only options were to negotiate with a hostile prosecutor, or go to trial, which García clearly, and reasonably, felt was not in Petitioner's best interests. Petitioner's counsel could not have impeded the prosecution from seeking or threatening to seek the harshest possible sentence.

Moreover, nothing has been presented to this Court suggesting that if Petitioner had gone to trial he would not have been convicted of all, or many, of the charges brought against him, in effect, exposing himself to a sentence commiserate with that threatened by the AUSA.

**CIVIL NO. 07-1282 (SEC)** Page 7

After all, the guilty plea only came after the United States announced four principal witnesses, and Petitioner was faced with a seemingly uphill battle at trial. Torres-Rosario, 447 F.3d at 63. Seen in this light, urging "sign, sign, sign" (Docket # 1 at 4) can hardly be interpreted as an unprofessional error, nor does this Court have evidence in front of it sufficient to conclude that Petitioner was prejudiced by entering a plea of guilty.

The modified plea agreement was substantially similar to that which had been on the table, but with less a less beneficial sentencing range, and "[here], the plea hearing conducted by the magistrate judge was impressively careful . . . [and nothing] in the colloquy indicated that [Petitioner] felt uncomfortable with his plea . . ." Torres-Rosario, 447 F.3d at 67. At said hearing, Petitioner expressed that his willingness to plea bargain responded to the disclosure of the evidence and witnesses against him. Id. Therefore, is should come as no surprise that the legality and voluntariness of the plea has already been affirmed on appeal. Torres-Rosario, 447 F.3d at 65.

Thus, even if this Court believed that attorney Garcia withheld information or misinformed Petitioner, as the latter now alleges, in clear contradiction to his previous statements in the Rule 11 hearing, the record shows that Petitioner was fully aware of all these issues when he entered his guilty plea since this Court addressed them to him at that time. Petitioner therefore fails to meet the burden presented by the Strickland test when he fails to show any real prejudice that would have come from his attorney's alleged inefficient assistance. In sum, García's urging to accept the plea was ". . . not improper and might well have been very wise advice." Torres-Rosario, 447 F.3d at 65.

*Conflict of Interest*

A Sixth Amendment claim for ineffective assistance of counsel on the basis of a conflict of interest requires "[a]ctual conflict of interest," which adversely affects counsel's performance.

Mickens v. Taylor, 535 U.S. 162, 122 S. Ct. 1237 (2002). At bar is a question of whether failing to mention a prosecutor's threats, or urging for a plea can constitute the first step in proving a conflict of interest.  Not every disagreement between a lawyer and client triggers the right to new counsel, rather actual *indicia* of actual conflict is generally required. Segarra-Rivera, 473 F.3d at 385. Here, Petitioner has only signaled conduct suggesting, ". . . a defense attorney's customary encouragement to his client-even strong encouragement- to avoid a trial by entering into a negotiated arrangement with the government." Id. at 386 (distinguishing said case from Torres-Rosario, 447 F.3d at 64-65). Nothing new has entered the record to suggest that the First Circuit's original appraisal of the conflict of interest issue should be revisited .

Why plaintiff believes that his counsel labored under a conflict of interest is nebulous; possibly hidden in his unfounded suggestions of an apocryphal collusion with the prosecutor. But the record does not suggest that any exculpatory evidence was concealed, nor that Petitioner's counsel, García, represented other co-defendants as was the case in U.S. v. Segarra-Rivera, 473 F.3d 381, 383 (1st Cir. 2007).  In other words, this Court cannot identify any clear allegation of an actual conflict of interest. Furthermore, this "type of claim, unlike an effectiveness claim, is not routinely relegated to a collateral review," id. at 385, and was effectively denied upon appeal.

In order for a successful attack on the effectiveness of counsel, due to a conflict of interest, at the  Rule 11 plea withdrawal stage, a petitioner ". . . must show that his counsel (1) could have perused some plausible line of argument at the plea withdrawal hearing, but (2) failed to do so due to a conflict with counsel's interests or loyalties." Cody v. U.S., 249 F.3d 47, 53 (1st Cir. 2001). Neither of these conditions have been met by Torres. Firstly, this Court was presented with Petitioner's theory of prosecutorial misconduct via *pro se* motions, which were denied on the merits. Furthermore, as the AUSA's threats were not illegal, García can hardly be

faulted for not premising the original motion to withdraw on them. In light of the above, any deficiencies in Garcia's counsel were harmless, or mooted by subsequent motions.

**Conclusion**

Petitioner was imputed with crimes carrying heavy jail sentences; there was no good option for him in light of the apparent strength of the United States' case, leaving his lawyer with very few options. The record suggests that the probabilities of conviction at trial were great, because Petitioner agreed to accept a plea shortly after the evidence and witness list to be used against him were announced. In this situation a plea, even one not on ideal terms for the offender, offered protection from a possible sentence of several decades of jail time. Petitioner's counsel can hardly be faulted for urging him to plead. Of course, the case would be different if Petitioner were to posit some deficiency or negligence in trial preparation, or how counsel handled the evidentiary aspects of the case. Nevertheless, no such allegations abound, and Petitioner's claim of ineffective assistance of counsel is **DISMISSED.**

For the reasons stated above, Petitioner's motion under 28 U.S.C. § 2255 is hereby **DENIED**, and the case is **DISMISSED with prejudice**.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 12th day of January, 2009.

*S/ Salvador E. Casellas*
SALVADOR E. CASELLAS
United States District Judge